UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                            CASE NO. 8:20-cr-278-JSM-AAS

RANDY JOSE BOLANOS RONDON

## UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum opposing the defendant's objections to the presentence investigation report and requesting a guideline sentence for Mr. Bolanos Rondon.

### Factual Background

Mr. Bolanos Rondon pleaded guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine aboard a vessel subject to United States jurisdiction and one count of possession with intent to distribute five kilograms or more of cocaine. Doc 74. According to the PSR, the following facts are not in dispute, *Id*:

On or about September 8, 2020, the U.S. Coast Guard ("USCG") intercepted a go-fast vessel (GFV) in the international waters of the Caribbean Sea, approximately 45 nautical miles south of Isla Beata, Dominican Republic. Three men were found on board the GFV—Mr. Bolanos Rondon and co-defendants Joah Manuel Feliz Gomez and Randy Bolanos Rondon. Mr. Feliz Gomez identified himself as the master and claimed Dominican Republic nationality for the vessel.

The Dominican Republic could not confirm the nationality or registry of the vessel. Therefore, the vessel was without nationality under 46 U.S.C. §§ 70502(c)(1)(A) and (d)(1)(C) and therefore subject to the jurisdiction of the United States. The Coast Guard recovered nine packages from the GFV, which the DEA laboratory later tested, and found to contain a net weight of 181 kilograms of cocaine.

Undisputed facts in the PSR also show that "while being detained and searched, USCG personnel located a firearm in the waistband of Gomez, which was loaded with a 30-round magazine, and an additional 15-round magazine was attached to [Gomez's] ankle." Doc. 92.

## **Procedural Background**

On August 20, 2020, a grand jury returned a two-count indictment against Mr. Bolanos Rondon and two co-defendants, Joah Manuel Feliz Gomez and Randy Jose Bolanos Rondon. Doc. 5. Count One charged the defendants with conspiring to distribute, and possession with the intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine. Count Two charged the defendants with possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine. *Id.*

On February 25, 2021, Mr. Bolanos Rondon pleaded guilty to Count One of the Indictment pursuant to a written plea agreement before the Honorable Magistrate Judge Amanda A. Sansone. Doc. 74. This Court adjudicated Mr. Bolanos Rondon guilty on March 16, 2021. Doc. 78.

## Presentence Investigation Report

The final version of the presentence report (PSR) for Mr. Bolanos Rondon was filed on June 3, 2021. Doc. 92. The presentence report calculated a base offense level of 36 based on the cocaine weight. *Id.* at ¶ 15. Specific offense characteristics and a three-level acceptance of responsibility adjustments were applied. *Id.* at ¶¶ 17, 23-4. A two-level enhancement for possessing a dangerous weapon was also applied. *Id*. at ¶ 16. The resulting total offense level is 33. *Id* at ¶ 25. Mr. Bolanos Rondon's criminal history was established to be Category I. *Id.* at ¶ 35. As a result, Mr. Bolanos Rondon's guideline imprisonment range was determined to be 135-168 months. *Id.* at ¶56. The guideline range for supervised release is 2 to 5 years, the fine range is $35,000 to $10,000,000, and a $200 special assessment is mandatory. *Id.* at ¶59, 63-4. The probation office did not identify any factors that would warrant departure from the applicable sentencing guideline range or that warrant a sentence outside the guidelines range *Id.* at ¶ 71-2

Mr. Bolanos Rondon, through counsel, filed objections to the initial PSR, objecting to the awarding of the dangerous weapon enhancement under USSG §2D1.1(b)(1) and to failure to award a two-level minor participant reduction under USSG §3B1.2(b)). The United States opposes these objections.

## Objection: Dangerous Weapon Enhancement

**A. Legal Framework**

Under USSG §2D1.1(b)(1), if a dangerous weapon (including a firearm) was

possessed, a two-level increase is added to the base offense level. The commentary note states that "the enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG §2D1.1 cmt. n. 11. Once the Government has shown proximity of the firearm to the site of the charged offense, the evidentiary burden shifts to the defense to demonstrate that a connection between the weapon and the offense is "clearly improbable." *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995).

The enhancement applies to a co-conspirator when the government establishes by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006).

Courts in the Eleventh Circuit have long found it "reasonably foreseeable" for a conspirator to possess a firearm in cases involving drug-trafficking. *Pham*, 463 F.3d at 1245 ("There is a frequent and overpowering connection between the use of firearms and narcotics traffic. To that end, we have found it reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs."); *see also United States v. Knights*, 808 F. App'x 885, 889 (11th Cir. 2020); *United States v. Medina*, 656 F. App'x 975, 979 (11th Cir. 2016) (reasonably foreseeable in a domestic drug trafficking conspiracy that defendant's co-conspirators "felt the need to protect their inventory and proceeds" by

possessing firearms); *United States v. Lopez,* 649 F.3d 1222, 1242 (11th Cir. 2011) ("[T]his Court has long recognized that, as Forrest Gump might say, drugs and guns go together like peas and carrots.") Possession can be reasonably foreseeable even when the defendant claims to have been unaware of the firearm. *United States v. Martinez*, 924 F.2d 209, 210 (11th Cir. 1991).

Dangerous weapon enhancements based on co-conspirator's possession of firearms have also been upheld in maritime smuggling cases. In *United States v. Castillo-Allen*, 567 F. App'x 738 (11th Cir. 2014), the Eleventh Circuit upheld such an enhancement in a case where the co-defendant had possessed a firearm during a maritime smuggling venture. *Id*. at 740. Even though the defendant in *Castillo-Allen* claimed ignorance of his co-conspirator's possession of a firearm, and was on a different boat from the co-conspirator who used the firearm, "it was reasonably foreseeable that one of eight men sailing 18 miles from land to international waters to pick up at least 550 kilograms of cocaine might bring along a firearm." *Id*. at 742. The Eleventh Circuit rejected the argument that it was rare or unusual for firearms to be involved in go-fast boat cases. *Id.* ("And the fact that this drug deal took place in the middle of the ocean (as opposed to the streets) does not change the calculus. There is no reason to think that there would be any less risk of firearms or violence when a large drug deal takes place on the high seas.") (citing *United States v. Pessefall*, 27 F.3d 511, 515 (11th Cir. 1994) as an example of a maritime smuggling case in which the dangerous weapon enhancement applied).

## B. Analysis

In this case, there is no dispute that Mr. Feliz Gomez is charged as a co-conspirator with Mr. Bolanos Rondon, and both men admitted to conspiring with one another to possess with intent to distribute 5 kilograms or more of cocaine. Doc. 45, 78). There is also no dispute that the weapon was present on Mr. Feliz Gomez's person when the three men were arrested at sea on board a go-fast vessel carrying cocaine, and Mr. Bolanos Rondon has not disputed this fact. Doc.92. The only question, then, is whether possession of a firearm by Mr. Feliz Gomez is reasonably foreseeable. But Eleventh Circuit precedent establishes that under these circumstances involving a large-scale drug smuggling event, a co-conspirator's possession of a firearm is reasonably foreseeable.

Just because Mr. Bolanos Rondon claims ignorance of the firearm does not mean that its possession by a co-conspirator was not foreseeable. *Pessefall*, 27 F.3d at 515. Mr. Bolanos Rondon elected to participate in a maritime drug smuggling operation involving 181 kilograms of cocaine worth $4.5 million dollars. Like in *Castillo-Allen*, 567 F. App'x at 740, it was reasonably foreseeable that one of the participants might bring along a firearm to protect this quantity of cocaine. *See also United States v. Freyre–Lazaro,* 3 F.3d 1496, 1506 (11th Cir.1993) ("it was reasonably foreseeable that [coconspirator], in furtherance of the conspiracy, would carry a weapon while transporting thirteen kilograms of cocaine"). The fact that this is a maritime smuggling case does not change that calculus. *Castillo-Allen*, 567 F. App'x at 743. Nor does the fact that Mr. Bolanos Rondon was unfamiliar with Mr. Feliz

Gomez prior to undertaking the conspiracy. *Id.* ("it would seem that the fact those doing illegal drug business together did not know each other beforehand would make possession of a firearm <u>more</u> instead of <u>less</u> likely") (emphasis added).

Because the possession of a firearm by co-conspirator Mr. Felix Gomez in furtherance of the conspiracy was reasonably foreseeable, Mr. Bolanos Rondon should receive the two-level dangerous weapon enhancement under USSG §2D1.1(b)(1).

## Objection: Minor Role

### A.    Legal Framework

Under the U.S. Sentencing Guidelines, a defendant may receive an offense level reduction for having a limited role in the offense. USSG §3B1.2. The defendant may receive a four-level reduction if he was a minimal participant, a two-level reduction if he was a minor participant, or a three-level reduction if he was somewhere in between. *Id.* The adjustment applies to defendants that are "***substantially less culpable than the average participant*** in the criminal activity." *Id.* §3B1.2 cmt. n.3(A) (emphasis added). The proponent of the downward adjustment bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. DeVaron,* 175 F.3d 930, 934 (11th Cir. 1999).

Determining whether a defendant merits a mitigating role reduction is a heavily fact-dependent, totality of the circumstances analysis. *Id.* §3B1.2 cmt. n.3(C) It requires consideration of various factors, including:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

In the Eleventh Circuit, determining whether a defendant merits a mitigating role reduction involves a two-pronged analysis. First, the court must evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. *DeVaron*, 175 F.3d at 934, 940. Second, where the record evidence is sufficient, the district court may also compare the defendant's conduct, in the criminal scheme attributed to him, to that of other participants. *Id.* at 934, 944.

Regarding the first prong in the *DeVaron* analysis, the Eleventh Circuit has explained that a mitigating role reduction for a defendant convicted of conspiracy "only makes sense analytically if the defendant can establish that her role was minor as compared to the relevant conduct **attributed to her**." *DeVaron*, 175 F.3d at 941 (emphasis in original). "Otherwise, a defendant could argue that her relevant conduct was narrow for the purpose of calculating base offense level but was broad for determining her role in the offense." *Id.* "A defendant cannot have it both ways."

*Id.* Accordingly, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.*

Concerning the second prong of the *DeVaron* analysis, the Eleventh Circuit has emphasized that "a defendant is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *DeVaron*, 175 F.3d at 944. Instead, "the district court must determine that the defendant was less culpable than ***most other participants*** in her relevant conduct." *Id.* (emphasis in original).

To assist in the mitigating role analysis, the Eleventh Circuit has provided a non-exhaustive list of factors to consider in the drug courier context, including the amount of drugs; the fair market value of the drugs; the amount of money the courier was to be paid; whether the courier had any equity interest in the drugs; the courier's role in planning the criminal scheme; and the courier's role in the distribution. *DeVaron*, 175 F.3d at 945.

The Eleventh Circuit has applied the *DeVaron* analysis to maritime interdiction conspiracy cases like the instant case and has upheld the district court's decision to deny a mitigating role reduction for a crewmember. For instance, in *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), the defendant - like Mr. Bolanos Rondon - pleaded guilty to drug trafficking in international waters in violation of 46

U.S.C. § 70503(a). The *Palma-Meza* court sentenced that defendant based on the quantity of cocaine involved (480 kilograms), the vessel's small crew size, and the defendant's background and work experience, and noted that the quantity of drugs "was not insignificant" and that his role on the vessel "was not meaningfully distinct from the other two crewmembers." *Id.* at 807-08; 810.

In *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016), the defendant faced the same two charges on which the grand jury indicted Mr. Bolanos Rondon. The *Herrera-Villarreal* court sentenced that defendant "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* The Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.* The court also pointed out that the defendant presented no evidence demonstrating that he was less culpable than the other vessel's crewmembers. *Id.*

### B. Mr. Bolanos Rondon cannot show he is substantially less culpable than the average participant in the criminal activity.

1. <u>Mr. Bolanos Rondon fails to satisfy the first prong of *DeVaron* analysis because he cannot show he is substantially less culpable within the conduct for which he was held accountable.</u>

*DeVaron*'s first prong requires the Court to evaluate the defendant's role in the relevant conduct for which he is being held accountable at sentencing. The object of

the conspiracy to which Mr. Bolanos Rondon pleaded guilty was to possess with intent to distribute 181 kilograms of cocaine by transporting these drugs through international waters with intent to distribute them to other persons. Several of the *DeVaron* and USSG §3B1.2 cmt. n. 3(C) factors weigh against finding that Mr. Bolanos Rondon played a minor role in this conspiracy.

The total value of the drugs Mr. Bolanos Rondon and his co-defendants conspired to transport was $4.5 million dollars. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role) *See also United States v. Cruickshank,* 837 F. 3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs that a courier possesses is a significant consideration in minor role analysis, but explaining that it may not be used as the *only* factor the court considers).

Because Mr. Bolanos Rondon's actual conduct was coextensive (if not far greater than) his relevant conduct, he cannot have had a minor role compared to his relevant conduct. Although Mr. Bolanos Rondon's conspiracy may be part of a larger criminal enterprise, he is not being held accountable for the actions of any larger enterprise. He is solely being held accountable for his actions aboard the go-fast vessel, with respect to the cocaine transported on that vessel. *DeVaron*, 175 F.3d at 941, 947 (court should evaluate defendant's role based on the conspiracy for which he is held accountable; rejecting notion that the defendant's role should be based on a "far-flung narcotics enterprise that may stretch from the grower, to the

manufacturer in a foreign land, through the distribution mechanism, to the final street-level distributor").

Lastly, Mr. Bolanos Rondon's offense level is calculated using only the amount of drugs on the vessel. Doc. 77 at ¶¶ 19-28. Thus, his "actual conduct was identical to the relevant conduct attributable to him." *Herrera-Villarreal*, 2016 WL 6123493 at *2. Because Mr. Bolanos Rondon did not have a minor role compared to his relevant conduct, he cannot carry his burden on the first prong of the *DeVaron* analysis. *See, e.g., Alvarado-Forbes*, 247 F. App'x at 205 (denying minimal participant or minor role where defendant claimed his sole purpose on a vessel with kilograms of cocaine was "to be a live body" and "make the vessel look like a fishing vessel"; defendant's stated purpose "would not make him a minor participant because concealing the illegal nature of the vessel's cargo would be vital to the success of the smuggling scheme").

2. <u>Mr. Bolanos Rondon fails to satisfy the second prong of the *DeVaron* analysis.</u>

Even if Mr. Bolanos Rondon could satisfy the first prong of the *DeVaron* analysis, he fails to satisfy *DeVaron*'s second prong, which requires the Court to compare the defendant's role in the conspiracy to that of other participants in the criminal scheme attributable to him. *DeVaron*, 175 F.3d at 934, 944. As previously noted, the conspiracy for which Mr. Bolanos Rondon is being held accountable is limited to the 181 kilograms of cocaine recovered from the GFV. The law is clear that the Court "cannot use a [defendant's] status [as a minor participant in the

12

overall drug smuggling conspiracy] to justify a minor-role reduction in his sentence for the smaller conspiracy in which he personally participated." *United States v. Bonilla-Ortiz*, 362 F. App'x 63, 65 (11th Cir. 2010); *United States v. Pico-Mocera*, 740 F. App'x 969, 972-73 (11th Cir. 2018) (upholding denial of minor role where defendant failed to prove he had a lesser role than either of the other crewmembers); *United States v. Palma-Meza*, 685 F. App'x 806, 811 (11th Cir. 2017) (upholding denial of minor role even though defendant was a mariner with less responsibility than captain and load guard); *United States v. Ramirez-Garcia*, 195 F. App'x 888, 890 (11th Cir. 2006) (rejecting mitigating role reduction where defendant was one of six mariners on a drug smuggling vessel that carried kilograms of cocaine).

The crux of the analysis is whether Mr. Bolanos Rondon is "substantially less culpable than the average participant" in the conspiracy. USSG §3B1.2 cmt. n.3(A). Stated differently, the issue is whether he is "less culpable than ***most other participants***" in the conspiracy. *DeVaron*, 175 F.3d at 944 (emphasis in original); USSG §3B1.2 cmt. n.5. Here, the average participant in the conspiracy for which Mr. Bolanos Rondon is being held accountable was a mariner in the boat transporting the drugs. Because Mr. Bolanos Rondon was himself a mariner, he is not "substantially less culpable than the average participant." Because Mr. Bolanos Rondon failed to show that he is substantially less culpable than the average participant in the relevant conduct, he should be denied a minor role adjustment.

## Sentencing Factors

In *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the USSG is not mandatory. *Booker*, 543 U.S. at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Accordingly, sentencing judges should apply the USSG in determining a reasonable sentence, but can also exercise discretion in deviating from the USSG, if doing so would result in a reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant;
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a USSG sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

To arrive at an appropriate sentence, the district court must consider all the applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

Operating with the understanding that there is no adverse information, the United States will not oppose any request by Mr. Bolanos Rondon for a low-end guideline sentence. The United States submits that such a sentence is appropriate considering the nature and circumstances of the offense, the history and characteristics of the defendant, and other factors set forth under 18 U.S.C. § 3553(a).

Any further departure or variance below the guidelines is, however, unwarranted and would result in a sentence insufficient to meet the statutory purposes of sentencing. Mr. Bolanos Rondon chose to participate in a conspiracy to transport millions of dollars of drugs aboard a three-person go-fast vessel. Despite any personal circumstances or financial hardship that may have driven Mr. Bolanos Rondon to take part in an international drug smuggling conspiracy, this case involves a serious drug trafficking offense and must be treated as such. *See U.S. v. Moreno*, 134 F. Appx. 339, 342 (11th Cir. 2005) (noting that U.S.S.G. 5K2.20(c)(3) foreclosed an aberrant behavior downward departure for serious drug trafficking offenses such as the maritime smuggling case - like this one - considered in Moreno).

Section 3553 makes clear that the Court is to impose a sentence that will help promote respect for the law, provide deterrence to the commission of any future offenses, and protect the public. *See* 18 U.S.C. § 3553. Had Mr. Bolanos Rondon and his co-conspirators successfully completed their mission, immense harm to others could have arisen from the distribution and use of such a significant quantity of cocaine. Thus, a Guidelines sentence will serve Section 3553's various interests.

## CONCLUSION

For the reasons set out in this memorandum, the Court should deny any motion for a mitigating role reduction.

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney


By: */s/ Tereza Zambrano Ohley*
Tereza Zambrano Ohley
Special Assistant United States Attorney
Florida Bar No. 0060407
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Tereza.Ohley@usdoj.gov

U.S. v. Bolanos Rondon                Case No. 8:20-cr-278-JSM-AAS

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

    Counsel of Record

                                            */s/ Tereza Zambrano Ohley*
                                            Tereza Zambrano Ohley
                                            Special Assistant United States Attorney
                                            Florida Bar No. 0060407
                                            400 N. Tampa Street, Suite 3200
                                            Tampa, Florida 33602-4798
                                            Telephone:  (813) 274-6000
                                            Facsimile:   (813) 274-6358
                                            E-mail: Tereza.Ohley@usdoj.gov